UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| CLAYTON M. HIGH WOLF, <br><br> Petitioner, <br><br> vs. <br><br> UNITED STATES OF AMERICA, <br><br> Respondent. | CIV. 18-5007-JLV <br><br> ORDER |

**INTRODUCTION**

Petitioner Clayton High Wolf, appearing *pro se*, filed a petition to vacate, correct or set aside his criminal judgment of conviction pursuant to 28 U.S.C. § 2255 ("2255 Petition"). (Docket 1). Following a jury trial, Mr. High Wolf was convicted of one count of possession of a firearm and ammunition by a prohibited person. United States v. High Wolf, CR. 14-50093 (D.S.D. 2014), Dockets 81 & 95. Mr. High Wolf makes several challenges to the conviction which will be addressed in this order. The government moved to dismiss Mr. High Wolf's 2255 Petition. (Docket 7). The matter was referred to Magistrate Judge Veronica L. Duffy pursuant to the court's standing order of October 16, 2014, and 28 U.S.C. § 636(b)(1) for a report and recommendation ("R&R"). The magistrate judge issued an R&R concluding Mr. High Wolf's 2255 Petition should be denied without an evidentiary hearing. (Docket 11). Mr. High Wolf filed a supplemental pleading to the 2255 Petition which purports to raise two additional claims. (Docket 14). Given Mr. High Wolf's *pro se* status, the court will construe his

factual recitation as objections to the magistrate judge's findings.  See

Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be

liberally construed[.]") (internal quotation omitted).   Because the supplemental

pleading addresses the R&R, the court finds Mr. High Wolf timely filed

objections to the R&R.[1]  Id.

Under the Federal Magistrate Act, 28 U.S.C. § 636(b)(1), if a party files

written objections to the magistrate judge's proposed findings and

recommendations, the district court is required to "make a de novo

determination of those portions of the report or specified proposed findings or

recommendations to which objection is made."  Id.   The court may "accept,

reject, or modify, in whole or in part, the findings or recommendations made by

the magistrate judge."  Id.   For the reasons given below, the court overrules

Mr. High Wolf's objections to the R&R and adopts the R&R in full.   The court

denies Mr. High Wolf's 2255 Petition.

## ANALYSIS

### I.     Facts and Procedural History

Mr. High Wolf does not specifically challenge the factual findings made

by the magistrate judge.   However, he argues the dash-camera video from

Rapid City Police Officer Carmen Visan's patrol car "should properly be viewed

---

[1]Mr. High Wolf also filed an *ex parte* motion asking the court to appoint a special master "to resolve issues pursuant to 28 U.S.C. § 530(B), known as the Citizens Protection Act of 1998."   (Docket 13).   Section 530B addresses the ethical standards for attorneys representing the government.   28 U.S.C. § 530B.   For the reasons stated in this order, Mr. High Wolf's motion is denied.

in conformance with Fed. R. Evid. 401(a) & (b)." (Docket 14 at p. 2). He asserts the video presents "undisputed facts" that when Officer Visan conducted a search of Mr. High Wolf "the video clearly shows that no evidence of ammunition or a weapon was taken from the person of Mr. High Wolf." Id. (capitalization omitted). The same video, he argues, shows Rapid City Police Office Seth Walker conducting a search of Mr. High Wolf and no ammunition or weapon was taken from his person. Id.

Officer Visan testified at the jury trial. She testified that after asking Mr. High Wolf to step out of the vehicle, she asked if he would allow her to conduct a pat-down and he agreed. CR. 14-50093, Docket 105 at p. 54:12-19. During the pat-down she felt what she thought might be "small caliber bullets" in his "front, left pocket of his pants or shorts." Id. at pp. 54:24 & 55:9. The officer was not concerned at that point because no firearm was located, so she continued with her request for his driver's license. Id. at p. 55: 4-12 and 65:21-66:3. Because he did not have a license in his possession, the officer asked for his full name, date of birth and social security number. Id. at p. 55:14-16. She ran this information with dispatch to verify his driver's license. Id. at p. 55:18-19.

The dispatcher reported Mr. High Wolf's license was suspended and he had "a warrant for driving under suspension." Id. at p. 58:9-11. At that point, Officer Walker handcuffed Mr. High Wolf and Officer Visan placed him under arrest. Id. at p. 58:23-24.

During trial, the government played the dash-camera video from Officer Visan's patrol car, with the government pausing the video from time-to-time for questions of the officer. Id. at pp. 59:23-67:17. At the point of the arrest of Mr. High Wolf, Officer Visan described what appeared on the video: "I searched his pockets myself. . . . I just did it because I knew I was going to put him in my car and I wanted to double check his pocket and make sure what I felt at first was what it could have been." Id. at pp. 67:25-68:5. The officer identified for the jury that she appeared "on the left-hand side of the screen" displaying the video. Id. at p. 68:6-8. She described conducting a more thorough search of his left front pocket. Id. at p. 68:10-13. She reached all the way to the bottom of a "fairly deep . . . mid-thigh" pocket. Id. at p. 68:17-21. In the bottom of the pocket she "found lots of live bullets, .22 caliber. . . . there were 39 . . . ." Id. at p. 69:2-5.

Mr. High Wolf's attorney took a screen shot of the initial pat-down by Officer Visan. CR. 14-50093, Docket 106 at pp. 116:13-117:12. Defense counsel then examined the officer about her perception of what was in Mr. High Wolf's pocket. Id. at pp. 119:20-120:18.

Officer Walker also testified at trial. As Mr. High Wolf's vehicle was coming to a stop, the officer observed Mr. High Wolf "leaning over toward the passenger side of the vehicle." Id. at p. 138:2-3. Officer Walker approached the vehicle and spoke to the two passengers still in the vehicle. Id. at p. 139:8-10. Later, as he conducted an inventory search of the vehicle, Officer

4

Walker located a Smith & Wesson .22 pistol under the front passenger seat. Id. at p. 148:16-19. Officer Walker found the firearm was loaded. Id. at p. 149:11-14. The magazine had "five rounds inside of it and one live round in the chamber." Id. at p. 149:19-22.

Special Agent Randel Probst with the Bureau of Alcohol, Tobacco, Firearms & Explosives testified at trial. He testified the Smith & Wesson firearm was manufactured in Springfield, Massachusetts. Id. at p. 178:19-20. Smith & Wesson also has another plant in Houlton, Maine, where firearm parts are made, shipped to Springfield and distributed out of the Massachusetts facility. Id. at p. 179:4-9. Based on his training and experience, Special Agent Probst testified the firearm affected interstate commerce. Id. at p. 180:1-3.

Regarding the Remington .22 caliber ammunition, Special Agent Probst testified it was manufactured in either Roanoke, Arkansas, or Bridgeport, Connecticut, but not in South Dakota. Id. at p. 181:21-25. Special Agent Probst testified the ammunition traveled in interstate commerce. Id. at p. 182:5-6.

The jury found Mr. High Wolf guilty of felon in possession of a firearm or ammunition. CR. 14-50093, Docket 81. In the special interrogatory, the jury unanimously found, beyond a reasonable doubt, that Mr. High Wolf possessed both the Smith & Wesson firearm and the Remington .22 caliber ammunition. Id.

## II. PROCEDURAL DEFAULT

The R&R recommends dismissal with prejudice on the three grounds asserted in Mr. High Wolf's 2255 Petition. (Docket 11 at p. 12). Those challenges are summarized as follows: (1) the government interfered with the state of South Dakota's independent prosecution "clear[ing] the way for a prosecution in the District Court of the United States." Id. at p. 4 (referencing Docket 1 at p. 2); (2) the firearm "was not possessed 'in or affecting interstate commerce' as required by 18 U.S.C. § 922(g)(1)." Id. (citing Docket 1 at p. 3); and (3) "the jury verdict . . . is void because it was obtained through the use of fraud, slander and libel." Id. at p. 5 (referencing Docket 1 at p. 4).

The magistrate judge arrived at that recommendation finding "[t]he three grounds Mr. High Wolf asserts in his § 2255 motion . . . were not included as grounds in his direct appeal." Id. at pp. 8-9. Referencing United States v. Frady, 456 U.S. 152, 167-68 (1982), and McNeal v. United States, 249 F.3d 747, 749 (8th Cir. 2001), the magistrate judge found "Mr. High Wolf has procedurally defaulted [on] all three of his § 2255 grounds for relief." Id. at p. 9. Mr. High Wolf does not challenge that finding but asserts "he is in fact actually innocent." (Docket 14 at p. 1).

"A motion under § 2255 is not a substitute for direct appeal . . . and is not the proper way to complain about simple trial errors . . . ." Anderson v. United States, 25 F.3d 704, 706 (8th Cir. 1994) (citation omitted). "[T]he cause and prejudice exception does not apply to nonconstitutional or

6

nonjurisdictional claims that could have but were not raised on direct appeal . . . . A petitioner simply cannot raise a nonconstitutional or nonjurisdictional issue in a § 2255 motion if the issue could have been raised on direct appeal but was not." Id. (citations omitted). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice' . . . or that he is 'actually innocent.' " Bousley v. United States, 523 U.S. 614, 623 (1998).

A petitioner's burden of proof under the actual innocence test is high. Schlup v. Delo, 513 U.S. 298, 324 (1995) ("To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."). "[A] petitioner can obtain review of procedurally defaulted claims if he produces reliable new evidence not available at trial which demonstrates that it is more likely than not, that with this evidence no reasonable juror would have convicted him." Amrine v. Bowersox, 128 F.3d 1222, 1226-27 (8th Cir. 1997) (referencing Schlup, 513 U.S. at 326-38).

"If a petitioner presents sufficient evidence of actual innocence, he should be allowed through this gateway permitting him to argue the merits of his underlying constitutional claims." Id. at 1227. "In deciding whether a petitioner has made the necessary showing of innocence, a federal court must

make its own determination of whether the 'probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial' is sufficient to warrant consideration of the otherwise barred claims." Id. (quoting Schlup, 513 U.S. at 330-32). "The underlying reason for an actual innocence gateway is that the 'quintessential miscarriage of justice is the execution of a person who is entirely innocent.' " Id. (quoting Schlup, 513 U.S. at 324-26). "[A]n evidentiary hearing is not required on a claim of actual innocence if development of the claim would not establish actual innocence." Bannister v. Delo, 100 F.3d 610, 617 (8th Cir. 1996).

Mr. High Wolf's actual innocence claim is resolved by the recitation of facts above. Petitioner asserts this evidence constituted "fraud on the machinery of the court through the willful use of slander. . . perjury . . . through reckless disregard for the truth, and wilful [sic] blindness to the facts of this case in violation of 18 U.S.C. § 530(B)." (Docket 14 at pp. 1-2) (capitalization omitted).

There is no merit to Mr. High Wolf's claim the video did not support the officers' testimony. Likewise, there is no merit to his claim the officers must have committed fraud on the court. Whether the officer's dash-camera caught the moment Officer Visan removed the .22 caliber ammunition from Mr. High Wolf's pants pocket is not the end of the matter. It was for the jury to evaluate the evidence, including the credibility of the two officers when compared to the dash-camera video. From the verdict, it is obvious the jury found beyond a

reasonable doubt Mr. High Wolf possessed both the ammunition and the firearm.

Mr. High Wolf's fourth objection "is insufficient to overcome the barrier of procedural default in the absence of a showing sufficient to satisfy *Schlup's* actual innocence gateway." Brownlow v. Groose, 66 F.3d 997, 999 (8th Cir. 1995).

Mr. High Wolf further asserts he is factually innocent because the government failed to prove he " 'knowingly' possess[ed] either the firearm or ammunition." Mr. High Wolf claims he "was not in personal possession of any ammunition or a firearm when he was search[ed] by both of the Rapid City Police Officers[.]" (Docket 14 at p. 5). This assertion is without merit. Officer Visan can be seen on the dash-camera video conducting a pat-down of Mr. High Wolf. During the pat-down, the officer testified she felt what she thought were small caliber bullets in his pocket, an assumption which turned out to be true.

At trial, Mr. High Wolf stipulated he was a convicted felon. CR. 14-50093, Docket 72 at p. 6. He also knew he "was restricted from possessing a firearm or ammunition[.]" (Docket 14 at p. 7). Both officers saw Mr. High Wolf inside the vehicle making an evasive movement—reaching downward to his right. The Smith & Wesson pistol was found in the location toward which he moved—under the front passenger's seat. The pistol contained a magazine with five .22 caliber bullets and a live .22 caliber round in the chamber. This

9

was the same type of ammunition found on Mr. High Wolf's person. Simply because Mr. High Wolf was courteous and cooperative at the scene does not undermine the jury's finding of guilt. His conduct satisfied the knowingly element of § 922(g)(1). See CR. 14-50093, Docket 72 at p. 7 ("As used in this instruction, an act is done 'knowingly' if the defendant realized what he was doing and did not act through ignorance, mistake, or accident. You may consider evidence of the defendant's acts and words, along with all the evidence, in deciding whether the defendant acted knowingly. The government is not required to prove the defendant knew his acts or omissions were unlawful.").

Mr. High Wolf's fifth objection "is insufficient to overcome the barrier of procedural default in the absence of a showing sufficient to satisfy *Schlup's* actual innocence gateway." Brownlow, 66 F.3d at 999.

## ORDER

For the reasons given above, it is

ORDERED that Mr. High Wolf's objections to the magistrate judge's report and recommendation (Docket 14) are overruled.

IT IS FURTHER ORDERED that the report and recommendation (Docket 11) is adopted in full.

IT IS FURTHER ORDERED that the government's motion (Docket 7) to dismiss Mr. High Wolf's 2255 Petition is granted.

IT IS FURTHER ORDERED that Mr. High Wolf's 2255 Petition (Docket 1) is dismissed with prejudice.

IT IS FURTHER ORDERED that, pursuant to 28 U.S.C. § 2253(c) and Rule 11 of the Rules Governing Section 2255 Cases, the court declines to issue a certificate of appealability. A certificate may issue "only if the applicant has made a *substantial showing* of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) (emphasis added). A "substantial showing" under this section is a showing that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). In other words, a "substantial showing" is made if a "court could resolve the issues differently, or the issues deserve further proceedings." Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997). Mr. High Wolf has not made a substantial showing of the denial of a constitutional right.

Although the court declines to issue a certificate of appealability, Mr. High Wolf may timely seek a certificate of appealability from the United States Court of Appeals for the Eighth Circuit under Federal Rule of Appellate Procedure 22. See Governing Rule 11(a); Fed. R. App. P. 22.

Dated January 27, 2020.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE